UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. BAKER,

      Plaintiff,                                      Case No. 13-12474

v.                                                        Hon. Patrick J. Duggan

BANK OF AMERICA, N.A., successor
by merger to BAC HOME LOAN
SERVICING, L.P. f/k/a COUNTRYWIDE
HOME LOANS SERVICING, L.P.,

      Defendant.

_____/

## **OPINION AND ORDER**

Plaintiff Michael J. Baker, who is proceeding *pro se*, instituted this action against Defendant Bank of America, N.A. ("BANA"), in state court seeking to redress alleged improprieties in the foreclosure of his home.  After removing the action to this Court, BANA filed a motion seeking dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Having determined that oral argument would not significantly aid the decisional process, the Court dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).  For the reasons stated herein, the Court grants BANA's Motion and dismisses this action without prejudice.

## I.    FACTUAL AND PROCEDURAL BACKGROUND [1]

### A.    The Note, Mortgage, and Eventual Foreclosure

On May 19, 2006, Plaintiff accepted a $111,853 loan from non-party Allen

Mortgage LC, and, in exchange, executed a promissory note secured by a mortgage

on a residential duplex located at 18740 and 18744 Moross Road, Detroit,

Michigan.  (Compl. ¶ 4; Note, Def.'s Mot. Ex. B; Mortgage, Def.'s Mot. Ex. C.)

The mortgage, executed in favor of Mortgage Electronic Registration Systems, Inc.

("MERS") as the nominee for the originating lender and its successors and assigns,

was recorded in the Wayne County Register of Deeds at Liber 44807, pages 1032-

32.  (Mortgage, Def.'s Mot. Ex. C.)

MERS assigned the mortgage to BAC Home Loans Servicing LP [2] on

August 12, 2010.  (Assignment, Def.'s Mot. Ex. D.)  As assignment reflecting this

---

[1] Plaintiff sets forth scant factual detail in his Complaint, although he does
provide that (1) Plaintiff claims the subject property in fee simple absolute by way
of an executed warranty deed; (2) Defendant claims the subject property in fee
simple by way of a sheriff's sale and sheriff's deed; (3) he purchased the property
and resides therein; (4) he attempted to get a loan modification for the subject
property; (5) despite never receiving notice of a sheriff's sale, a sheriff's sale was
conducted on August 23, 2012; (6) the redemption period has expired; and (7) that
since the sheriff's sale, Plaintiff and "their" representatives have attempted in good
faith to continue with "a Loan Modification process to no avail."  (Compl. ¶¶ 3-
13.)

[2] On July 1, 2011, BAC Home Loans Servicing, LP, merged into Bank of
America, N.A., and is now known as Bank of America, N.A., as successor by
merger to BAC Home Loans Servicing LP.  The Certificate of Merger is on file
with the Office of the Secretary of State of Texas, Document No. 374034630002.

transfer was recorded with the Wayne County Register of Deeds on August 27, 2010, at Liber 48708, page 863. (*Id.*) As a result of this assignment, BANA became the loan servicer and mortgagee of record.

Plaintiff eventually defaulted on his loan obligations by failing to remit timely payments. As a result, BANA, acting through its agent, the law firm of Trott & Trott, accelerated the loan and commenced foreclosure proceedings. A notice of foreclosure was initially published in the Detroit Legal News on August 12, 2010. (Aff. of Publication, attach. to Sheriff's Deed, Def.'s Mot. Ex. E.) Subsequent to the assignment from MERS to BANA, a new notice of foreclosure was published in the Detroit Legal News over four consecutive weeks beginning on September 9, 2010. (Second Aff. of Publication, attach. to Sheriff's Deed, Def.'s Mot. Ex. E.) A notice of the foreclosure was posted "in a secure manner to the front door[]" on September 10, 2010. (Evidence of Sale, attach. to Sheriff's Deed, Def.'s Mot. Ex. E.)

Although originally scheduled for October 7, 2010, the sheriff's sale was adjourned until August 23, 2012. This sale was held "without the knowledge of the Plaintiff." (Compl. ¶ 9; *see also id.* at ¶ 10 ("Although the Plaintiff was aware of a possible Sheriff Sale, the Plaintiff[] never received notice of the August 23, 2012 Sheriff Sale.").) At the sale, BANA purchased the premises for $148,536.04. (Aff. of Purchaser, attach. to Sheriff's Deed, Def.'s Mot. Ex. E.) The sheriff's

3

deed was recorded with the Wayne County Register of Deeds on September 6, 2012, at Liber 50125, page 1383.  (Sheriff's Deed, Def.'s Mot. Ex. E.)  Pursuant to Michigan law, the six-month statutory redemption period expired on February 23, 2013.  Mich. Comp. Laws § 600.3240(8).  Plaintiff did not redeem but alleges that "since the Sheriff Sale[,] the Plaintiff has attempted in good faith to continue with a Loan Modification process to no avail."  (*Id.* at ¶ 12.)

**B.      Previous Court Proceedings**

Plaintiff previously filed two complaints, one on March 22, 2011 and the other on December 12, 2011, against BANA in the Third Judicial Circuit Court of Wayne County.  (Complaints, Def.'s Mot. Exs. F, H.)  Both cases were dismissed without prejudice for lack of service.  (Dismissals, Def.'s Mot. Exs. G, I.)

On March 29, 2013, Plaintiff filed for Chapter 13 bankruptcy with the United States Bankruptcy Court in the Eastern District of Michigan.[3]  One month later, the Bankruptcy Court granted BANA relief from the automatic stay, thus allowing BANA to resume enforcing its rights against Plaintiff and the property.  (Order, Def.'s Mot. Ex. J.)  The case was terminated in July of 2013.

On May 17, 2013, the 36th Judicial District Court located in Detroit, Michigan, entered a judgment of possession by default in favor of BANA, giving

---

[3] Case No. 13-46430.

4

BANA the right to apply for an order of eviction after May 29, 2013.[4]  (Def.'s Mot.

Ex. K.)  Plaintiff's request to set aside the default judgment of possession was

denied.  (*Id.*)

## C.   The Instant Action

On May 13, 2013, just days before the 36th District Court entered of

judgment of possession in favor of BANA, Plaintiff filed the instant four-count

Complaint against BANA in the Circuit Court for the County of Wayne, seeking to

quiet title and requesting damages, costs and fees, and an order requiring BANA to

process a loan modification.[5]  (Compl.)  BANA, invoking federal diversity

jurisdiction, removed the action to this Court on June 6, 2013.  28 U.S.C. §§ 1332,

1441, 1446.  After twice receiving extensions of the time to file a responsive

pleading, BANA filed a Motion to Dismiss Plaintiff's Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6) on August 30, 2013.  Despite apprising

the parties of the Court's motion practice guidelines, Plaintiff did not respond to

BANA's Motion and the time for doing so has expired.

Plaintiffs' Complaint sets forth four counts: Count I – Quiet Title; Count II –

Unjust Enrichment; Count III – Breach of Implied Agreement/Specific

---

[4] Case No. 13312734.

[5] Case No. 13-006181-CH.

5

Performance; and Count IV [6] – Breach of Michigan Compiled Laws § 600.3205(c). Each count generally alleges wrongdoing with the foreclosure by advertisement process based on allegations that BANA did not modify Plaintiff's loan.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) allows a court to make an assessment as to whether a plaintiff's pleadings have stated a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555-56, 570, 127 S. Ct. 1955, 1964-65, 1974 (2007), a court must construe the complaint in favor of the plaintiff and determine whether the plaintiff's factual allegations present claims plausible on their face.  This standard requires a claimant to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims.  *Id.* at 557, 127 S. Ct. at 1965.  Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965) (internal citations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a

---

[6] Plaintiff's Complaint erroneously labeled this count as Count VII.

short and plain statement of the claim showing that the pleader is entitled to relief[.]").

In determining whether a plaintiff has set forth a "claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974), courts must accept the factual allegations in the complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965. This presumption, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted).

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of [a legal transgression], the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted). In conducting its analysis, the Court may consider the complaint and any exhibits attached thereto, public

7

records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). In the case at bar, the Court has considered documents, all of which are public, relating to the mortgage, the loan modification process, and the foreclosure.

Compared to formal pleadings drafted by lawyers, a generally less stringent standard is applied when construing the allegations pleaded in a *pro se* complaint. *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 596 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (reaffirming rule of more liberal construction with pro se complaints less than two weeks after issuing *Twombly*). The leniency with which courts construe *pro se* plaintiffs' complaints, however, does not abrogate the basic pleading requirements designed to ensure that courts do "not have to guess at the nature of the claim asserted." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). *Pro se* plaintiffs still must provide more than bare assertions of legal conclusions to survive a motion to dismiss. *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). However, because deficiencies in a pro se plaintiff's complaint are likely attributable to a lack of training, "courts typically permit the losing party leave to amend[,]" even in

8

the absence of a specific request by the non-moving party. *Brown v. Matauszak*,

No. 09-2259, 415 F. App'x 608, 614-615 (6th Cir. Jan. 31, 2011) (McKeague, J.)

(quotation omitted).

### III.   ANALYSIS

BANA seeks dismissal of Plaintiff's Complaint on the basis (1) that Plaintiff

has failed to plead facts regarding a fraud or irregularity sufficient to justify the

equitable extension of the statutory redemption period and (2) that each of

Plaintiff's individual counts fails to state a claim upon which relief can be granted.

### A.   General Principles Pertaining to Michigan's Foreclosure by Advertisement Statute

Foreclosures by advertisement, such as the foreclosure at issue in this case,

as well as the rights of both the mortgagor and mortgagee after a foreclosure sale

has occurred, are governed by Michigan statutory law. *See, e.g.*, *Senters v. Ottawa*

*Sav. Bank, F.S.B.*, 443 Mich. 45, 50, 503 N.W.2d 639, 641 (1993); *Conlin v.*

*Mortgage Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (applying

Michigan law) (citation omitted).

Pursuant to Michigan law, a mortgagor has six months from the date of the

sheriff's sale to redeem a foreclosed property. Mich. Comp. Laws § 600.3240(8).

Significant consequences flow from a mortgagor's failure to redeem prior to the

expiration of this six-month period: the mortgagor's "right, title, and interest in and

to the property" are extinguished, *Piotrowski v. State Land Office Board*, 302

9

Mich. 179, 4 N.W.2d 514, 517 (1942), and the deed issued at the sheriff's sale "become[s] operative, and [] vest[s] in the grantee named therein . . . all the right, title, and interest [] the mortgagor had[,]" Michigan Compiled Laws § 600.3236. This rule of law – holding that absolute title vests in the purchaser at the foreclosure sale upon expiration of the redemption period – has been applied consistently by state and federal courts alike to bar former owners from making any claims with respect to a foreclosed property after the statutory redemption period has lapsed.

There is, however, one caveat to the general rule described above.  Once a foreclosure sale has taken place and the redemption period has run, a court may allow "an equitable extension of the period to redeem" if a plaintiff-mortgagor makes "a clear showing of fraud, or irregularity[.]"  *Schulthies v. Barron*, 16 Mich. App. 246, 247-48, 167 N.W.2d 784, 785 (1969); *see also Freeman v. Wozniak*, 241 Mich. App. 633, 637, 617 N.W.2d 46, 49 (2000) ("[I]n the absence of fraud, accident or mistake, the possibility of injustice is not enough to tamper with the strict statutory requirements.") (citing *Senters*, 443 Mich. at 55, 503 N.W.2d at 643).  Notably, the purported fraud or irregularity must relate to the foreclosure procedure.  *Reid v. Rylander*, 270 Mich. 263, 267, 258 N.W. 630, 631 (1935) (holding that only the foreclosure procedure may be challenged after a sale);

10

*Freeman*, 241 Mich. App. at 636-38, 617 N.W.2d at 49 (reversal of sheriff's sale improper without fraud, accident, or mistake in foreclosure procedure).

If a plaintiff seeking to set aside the sheriff's sale demonstrates fraud or irregularity in connection with the statutory foreclosure procedure, the result is "a foreclosure that is voidable, not void *ab initio*." *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115, 825 N.W.2d 329, 337 (2012). In order "to set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's failure to comply" with Michigan's foreclosure by advertisement statute. *Id.* "To demonstrate such prejudice, [plaintiffs] must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Id.* at 115-16, 825 N.W.2d at 337 (footnote omitted).

Although the redemption period has expired in the instant case, Plaintiff asks the Court to quiet title in his favor. In asking for this relief, Plaintiff implicitly requests that the Court rescind the sheriff's sale. The posture of this case therefore requires that the Court assess whether Plaintiff's Complaint states a claim upon which relief may be granted within the fraud or irregularity framework outlined above. In other words, the Court must determine whether, under Michigan law, the foreclosure sale is voidable, or could be set aside, on the facts alleged. *See Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (observing that

11

the *Erie* doctrine requires federal courts hearing state law claims to apply the decisions of the state's highest court).

**B.      Setting Aside the Foreclosure Sale**

*1.      Fraud*

The word fraud appears twice in Plaintiff's Complaint.  In Count III, Plaintiff alleges that he has a superior claim in the property because of the "Fraud . . . on the part of the Defendant[.]"  (Compl. ¶ 29.)  Plaintiff also alleges "[t]hat on December 31, 2012, Plaintiff, believing that he has been a victim of foreclosure fraud[,] applied for an Independent Foreclosure Review with the Office of the Comptroller of the Currency (OCC)." (*Id.* at ¶ 31.)

Plaintiff's threadbare and conclusory allegations of fraud do not suffice to state a claim.  Claims of fraudulent conduct must adhere to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  To satisfy Rule 9(b)'s particularity requirement, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008) (internal quotation marks and citation omitted); *see also Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th

12

Cir. 2006) ("As a sister circuit has phrased it," Rule 9(b) requires a plaintiff to "specify the 'who, what, when, where, and how' of the alleged fraud.") (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

Although Plaintiff's Complaint does use the word "fraud," the Complaint fails provide the "who, what, when, where, and how" of the alleged fraud and therefore lacks the factual enhancement necessary to put BANA on notice of the claims asserted against it. Perhaps more fatal to his ability to withstand Defendant's Motion is that Plaintiff's allegations of fraud do not appear to pertain to the foreclosure procedure; rather, the allegations apply only to the loan modification process. *See, e.g.*, *Reid*, 270 Mich. at 267, 258 N.W. at 631. Even if fraudulent conduct in the loan modification process is deemed part of the foreclosure procedure, Plaintiff's Complaint still fails to state a claim as Plaintiff has not alleged actionable prejudice as required by *Kim*. The Complaint does not allege that the purported fraud impacted his ability to make timely mortgage payments and it does not contain allegations "show[ing] that [he] would have been in a better position to preserve [his] interest in the property." *Kim*, 493 Mich. at 115-16, 825 N.W.2d at 337.

Accordingly, Plaintiff has failed to set forth a plausible claim of fraud to justify the rescission of the sheriff's deed.

13

## 2.    *Irregularity*

The Complaint contains two suggestions of an irregularity.  First, Plaintiff alleges that he "never received notice of the August 23, 2012 Sheriff Sale." (Compl. ¶ 10.)   Even assuming that Plaintiff never received formal notice, his Complaint does provide that "Plaintiff was aware of a possible Sheriff Sale[.]" (*Id.*)  To the extent Plaintiff suggests that the prolonged adjournment of the sheriff's sale resulted in a notice defect, any such defect does not render the resulting foreclosure void.  Under Michigan law, "a defect in notice renders a foreclosure sale voidable[,]" not void *ab initio*, meaning that a court must examine "whether any harm was caused by the defect" such that the mortgagor lost the "potential opportunity to preserve some or any portion of his interest in the property[.]"  *Jackson Inv. Corp. v. Pittsfield Prod., Inc.*, 162 Mich. App. 750, 755, 756, 413 N.W.2d 99, 101 (1987).   Plaintiff has not alleged any such harm here.

The second possible irregularity is that Plaintiff was attempting to negotiate a loan modification before and after the sheriff's sale but that BANA's actions were "intentionally designed to preclude the Plaintiff f[ro]m entering into a Loan Modification to keep possession of his home[]" in violation of Michigan Compiled Laws § 600.3205(c).  (Compl. ¶ 16; *see also id.* at ¶ 17 ("Defendant[] did undertake to foreclose on the subject property without allowing the Plaintiff to Modify the Loan.).)  The Complaint provides no factual basis to support this

14

assertion and such conclusory allegations do not suffice to survive a Rule 12(b)(6) motion.

Because Plaintiff has not alleged sufficient facts showing the existence of an irregularity in the foreclosure procedure, he has failed to show an entitlement to rescission.

## C.      Individual Counts

### 1.      *Count I – Quiet Title*

In Count I, Plaintiff seeks to set aside the sheriff's sale and have the Court declare that he has legal title to the property.  As an initial matter, the Court notes that quiet title actions are remedies, not independent causes of action.  *Goryoka v. Quicken Loan, Inc.*, No. 11-2178, 2013 U.S. App. LEXIS 5524, at * 7 (6th Cir. Mar. 18, 2013) (per curiam).  Michigan law does, however, provide a statutory mechanism for quieting title, which the Court addresses in the interest of completeness.  Mich. Comp. Laws § 600.2932(1) ("Any person . . . who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action . . . against any other person who claims . . . [an inconsistent interest.]").  The statutory language requires a plaintiff seeking to quiet title to establish a substantive right in the property superior to others claiming an inconsistent interest.  *Beach v. Twp. of Lima*, 489 Mich. 99, 110, 802 N.W.2d 1, 8 (2011).  Plaintiff bears the initial burden of proof and must establish a *prima facie*

case of title.  *Stinebaugh v. Bristol*, 132 Mich. App. 311, 316, 347 N.W.2d 219,

221 (1984) (citation omitted).  "Establishing a *prima facie* case of title requires a

description of the chain of title through which ownership is claimed."  *Sembly v.*

*U.S. Bank, N.A.*, No. 11-12322, 2012 U.S. Dist. LEXIS 1440, at *9 (E.D. Mich.

Jan. 6, 2012) (Rosen, C.J.).

Here, Plaintiff has not alleged facts establishing a *prima facie* case of title.

Plaintiff merely asserts, without further documentation or supporting facts, that he

acquired title to the property by way of an executed warranty deed and that

Defendant claims an interest pursuant to the sheriff's deed.  (Compl. ¶¶ 5-6, 18.)

These allegations do not describe a chain of title nor do the allegations demonstrate

a superior chain of ownership in Plaintiff's favor.  As in *Rydzewski v. Bank of N.Y.*

*Mellon*, "Plaintiff does not contest that he failed to pay and defaulted on the loan.

He provides no allegations to indicate that he has a plausible claim of ownership

superior to the Bank's."  No. 12-12047, 2012 U.S. Dist. LEXIS 129955, at *10

(E.D. Mich. Sept. 12, 2012) (Cohn, J.).  In fact, Plaintiff's Complaint supports a

finding that BANA has a superior title to the property based on the sheriff's sale

and expiration of the redemption period.  (*See* Compl. ¶ 9 ("[T]he redemption

period . . . expired[.]")); *Piotrowski*, 302 Mich. at 186, 4 N.W.2d at 516

(explaining that mortgagors lose "all their right, title, and interest in and to the

16

property at the expiration of their right of redemption").  Therefore, the Court dismisses Count I for failure to state a claim upon which relief can be granted.[7]

### 2.      *Count II – Unjust Enrichment*

Count II seeks to state a cause of action for unjust enrichment.  In Michigan, a claim for unjust enrichment requires a plaintiff to show a "(1) receipt of a benefit by Defendant from Plaintiff, and (2) an inequity resulting to Plaintiff because of Defendant's retention of the benefit."  *Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 478, 666 N.W.2d 271, 280 (2003) (citation omitted).   If both elements are shown, courts will imply a contract to prevent unjust enrichment.  *Fodale v. Waste Mgmt. of Mich., Inc.*, 271 Mich. App. 11, 36, 718 N.W.2d 827, 841 (2006). Importantly, however, a contract will not be implied where there is an express contract governing the same subject matter.  *Id.*

Plaintiff alleges that BANA prevented him from receiving a loan modification prior to foreclosure and that BANA has been "unjustly enriched in excess of $25,000 and Plaintiff would suffer a loss in that amount, plus the loss of the subject property as a result of attempting in good faith to Modify the Loan in order to keep possession of his home."  (Compl. ¶ 22.)  These allegations fail to state a claim for two reasons.

---

[7] Because Plaintiff has not demonstrated superior title, the Court declines to address BANA's argument that the quiet title action is barred by the doctrine of unclean hands.

First, the purported "unjust enrichment" is factually frivolous as Plaintiff borrowed funds to purchase the property and failed to repay them. "There is nothing inequitable about a bank's decision to exercise a standard, statutory foreclosure remedy when a borrower stops making payments on a loan secured by a mortgage." *Smith v. Litton Loan Servicing, L.P.*, No. 12-1684, 2013 U.S. App. LEXIS 5058, at * 9 (6th Cir. Mar. 12, 2013) (unpublished). Although Plaintiff has technically alleged an inequity, this Court is "not bound by allegations that are clearly unsupported or unsupportable[.]" *Blackburn v. Fisk Univ.*, 443 F.2d 121, 123 (6th Cir. 1971) (citations omitted).

The second reason the unjust enrichment claim fails is that the mortgage and note establish the rights and obligations of the parties relative to the property, including the right to foreclose in the event Plaintiff defaults upon the payment terms set forth in the note. *See, e.g.*, *Rydzewski*, No. 12-12047, 2012 U.S. Dist. LEXIS 129955, at *12-13 (rejecting claim for unjust enrichment when the rights and obligations of the parties were governed by a mortgage and note). Plaintiff defaulted on the loan obligations and BANA, the foreclosing party, acted in accordance with its rights under the terms of the note. Because an express contract governs the rights and obligations of the parties with respect to the property, Plaintiff cannot state a plausible unjust enrichment claim. Therefore, the Court dismisses Count II.

18

**3.      *Count III – Breach of Implied Agreement/Specific Performance***

In Count III, Plaintiff appears to make allegations concerning an alleged

implied agreement to modify his loan.  Plaintiff also makes reference to his

application "for an Independent Foreclosure Review [("IFR")] with the Office of

the Comptroller of the Currency[.]"  (Compl. ¶ 31.)  The Court addresses these

allegations separately.

In Count III, Plaintiff seeks an order requiring Defendant to "continue the

processing of a Loan Modification on the subject property so that the Plaintiff can

keep possession of his home."  (*Id.* at ¶ 30.)  Although Plaintiff acknowledges that

he "did not Modify a Loan with" BANA, since the sheriff's sale, he has "attempted

in good faith to continue with the Loan Modification process to no avail." (*Id.* at ¶

24, 27.)  Based on these allegations, it appears that Plaintiff's claim for a breach of

an implied agreement is premised on statements (or hopes) pertaining to a loan

modification.  This claim, however, is expressly precluded by Michigan's statute

of frauds.

Under Michigan's statute of frauds, any alleged promise by a financial

institution to renew, extend, modify, or permit a delay in repayment or

performance of loan must be reduced to a writing and signed by the financial

institution to be enforceable.  Mich. Comp. Laws § 566.132(2)(b).  As the

Michigan Court of Appeals has explained, this statute precludes a party "from

19

bringing a claim--no matter its label--against a financial institution to enforce the terms of an oral promise[.]" *Crown Tech. Park v. D&N Bank, F.S.B.*, 242 Mich. App. 538, 550, 619 N.W.2d 66, 72 (2000). Plaintiff does not allege that BANA made any representations regarding a loan modification. However, even assuming that Plaintiff's Complaint contains sufficient factual allegations to establish the existence of an oral promise to modify the loan, Plaintiff has not alleged the existence of a writing signed by BANA confirming any such loan modification. As such, Count III must be dismissed as barred by Michigan's statute of frauds. *Rydzewski*, No. 12-12047, 2012 U.S. Dist. LEXIS 129955, at *13.

Count III also appears to suggest that Plaintiff's application for an IFR formed the basis of an implied agreement. However, the IFR pertains to consent agreements between regulators and mortgage servicers, including BANA. The agreements came to fruition as a result of problematic practices pervading the mortgage industry. After applying for an IFR, the application is reviewed and if the application satisfies certain criteria, the applicant may receive anywhere from "hundreds of dollars up to $125,000[.]" (Compl. ¶ 33.) Plaintiff was informed in "late January 2013[]" that he qualified and would receive compensation somewhere within the aforementioned range. (*Id.*) In April of 2013, "Plaintiff received a check for $500.00 from Rust Consulting, Inc.," an entity "retained to

20

administer payments to borrowers on behalf of the servicers."  (*Id.* at ¶ 34.)
Plaintiff believes that the amount he received "was an insult."  (*Id.*)

It is not entirely clear what forms the basis for Plaintiff's claim regarding the
IFR.  His Complaint indicates that he received monetary compensation in an
amount described in the postcard he received, albeit an amount on the low end of
the range.  In any event, Plaintiff does not allege that BANA breached any
agreement under the IFR.  As BANA argues, even if Plaintiff had alleged some
breach of the IFR, Plaintiff is a non-party to the consent agreements related to the
IFR and therefore lacks standing to enforce any terms contained therein.  Plaintiff
offers no legal authority or argument in support of his attempt to act as a third-
party beneficiary to the consent order.  *See Vogel v. City of Cincinnati*, 959 F.2d
594, 598 (6th Cir. 1992) ("A consent decree is not enforceable . . . by those who
are not parties to it.") (quotation omitted).

For the reasons set forth above, the Court dismisses Count III.

**4.**     ***Count IV – Violation of Michigan Compiled Laws § 600.3205(c)***

Plaintiff's last count is that BANA violated Michigan Compiled Laws §
600.3205c, which establishes procedures for the parties to a mortgage to engage in
loan modification discussions.  The Complaint recites the pertinent statutory
language and in a wholly conclusory fashion devoid of any factual enhancement

21

alleges that BANA violated the statute by "fail[ing] to modify Plaintiff's mortgage."  (Compl. ¶ 37.)

The Court first notes that Plaintiff has not alleged that he complied with his obligations under Michigan's loan modification statute.  Plaintiff has not alleged that he contacted a housing counselor nor has he alleged that he submitted the documentation required to facilitate a loan modification.  *See* Mich. Comp. Laws § 600.3205b(1)-(2).  Without these facts, the Court has no way of determining whether BANA's obligation to commence the loan modification process was ever triggered.  *Id.* § 600.3205c(1).

Plaintiff fails to state a claim for additional reasons.  First, the statute does not require mortgage holders or servicers to modify a loan and therefore, the failure to modify does not provide an independent basis for finding a statutory violation.  *Dingman v. One West Bank, FSB*, 899 F. Supp. 2d 912, 922 (E.D. Mich. 2012); *see also Ellison v. JPMorgan Chase, N.A.*, No. 12-12629, 2012 U.S. Dist. LEXIS 142386, at *13 (E.D. Mich. Oct. 2, 2012) (Cohn, J.) (explaining that the loan modification statute "does not require [banks] to modify any specific loan[]").  Second, the statute "does not provide any basis for unwinding the foreclosure." *Ellison*, No. 12-12629, 2012 U.S. Dist. LEXIS 142386, at *13; *see also Benford v. CitiMortgage, Inc.*, No. 11-12200, 2011 U.S. Dist. LEXIS 130935, at *5 (E.D. Mich. Nov. 14, 2011) (Duggan, J.) ("[T]he statute does not permit the Court to set

22

aside a completed foreclosure sale.").  Rather, the statute provides for a specific remedy in cases where a foreclosure by advertisement is commenced in violation of the loan modification statute: "the borrower may file an action in the circuit court for the county where the mortgaged property is situated to convert the foreclosure proceeding to a judicial foreclosure."  Mich. Comp. Laws § 600.3205c(8); *see also Block v. BAC Home Loans Serv., L.P.*, No. 12-1955, 2013 U.S. App. LEXIS 6393, at *4-5 (6th Cir. Mar. 26, 2013) ("Even if the Blocks' [loan modification] claim had merit, they could not receive what their complaint asks for: 'all legal title to' the foreclosed home. . . . Instead, the remedy for a breach of the loan-modification statute is to 'convert the foreclosure proceeding to a judicial foreclosure.'") (citations omitted).

In the instant case, the foreclosure is complete and a judgment of possession has been entered in favor of BANA.  Even assuming Plaintiff was entitled to a loan modification, which he has not pled, he cannot obtain the relief he seeks because the Court is without authority to set aside the foreclosure sale and order BANA to modify the loan.  Count IV of Plaintiff's Complaint is therefore dismissed for failure to state a claim.

## IV.   CONCLUSION AND ORDER

For the reasons set forth above, BANA's Motion to Dismiss is **GRANTED** and Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**.  If Plaintiff

23

would like to file an amended complaint, it must comply with Federal Rules of

Civil Procedure 8 and 9.  Should Plaintiff elect to amend, he must file an amended

complaint within **21 DAYS** of receiving this Opinion and Order.

**IT IS SO ORDERED.**

Date:  November 6, 2013

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
**Michael J. Baker**
18740 Moross Road
Detroit, MI 48224-1026

**Trevor M. Salaski, Esq.**
**Brian C. Summerfield, Esq.**